# UNITED STATES COURT OF APPEALS
# FOR THE TENTH CIRCUIT

| | |
|---|---|
| MARK A. PENDERGRAFT<br><br>Plaintiff / Petitioner-<br>    Appellant,<br><br>v.<br><br>BOARD OF REGENTS OF<br>OKLAHOMA COLLEGES, DAVID<br>MISAK, in his individual and official<br>Capacities, and TODD THURMAN, in<br>his individual and official capacities.<br><br>Defendant / Respondent-<br>    Appellee, | Case No. 22-6045<br>Dist. / Ag Docket: 5:18-CV-00793-D<br><br>Appellant / Petitioner's Opening<br>Brief |

## APPELLANT / PETITIONER'S OPENING BRIEF

**Comes Now**, Plaintiff / Petitioner - Appellant, Pro se, Mark A. Pendergraft, and respectfully submits his Opening Brief regarding his above Appeal.

## 1. STATEMENT OF THE CASE

Appellant filed his Complaint in the present action on August 17, 2018, in the U.S. District Court for the Western District of Oklahoma (Doc. No. 1), and subsequently filed his Amended Complaint on October 26, 2018. (Doc. No. 17). Appellant filed claims against Defendants, Board of Regents of Oklahoma Colleges (Hereinafter B.R.O.C.), David Misak, in his individual and official capacity (Hereinafter "Misak") and Todd Thurman, in his individual and official capacity,(Hereinafter "Thurman").

Appellant made all (6) six claims against the Individual Defendants in both their individual and official capacities: Count I – Violation of the Equal Pay act, Count II – Title VII Gender Discrimination, Count III- "Tortious Interference with Business Relations," Count IV – Breach of Contract, Count V – Tortious Interference with Prospective Economic Advantage, and Count VI - Conspiracy. Plaintiff made (4) four claims against BROC: Count I – Violation of the Equal Pay Act, Count II – Title VII Gender Discrimination, Count III- "Tortious Interference with Business Relations," and Count IV – Breach of Contract.

Defendants filed their Motion to Dismiss (Doc. No 22). Plaintiff, appearing pro se, responded ( Doc. No. 31) and Defendants replied ( Doc. No. 32).

The Honorable Judge DeGiusti's "ORDER" **GRANTED** in part and **DENIED** in part Defendants' Partial Motion to Dismiss (Doc. No. 33). The Court ruled that Plaintiff's remaining claims are: (1) Count I, violation of Equal Pay Act, 28 U.S.C. § 206(d) against Defendant Board of Regents of Oklahoma Colleges; (2) Count III, tortious interference with business relations against Defendants Misak and Thurman in their individual capacities; (3) Count IV, breach of contract against all Defendants; and (4) Count V, tortious interference with prospective economic advantage against Defendants Misak and Thurman in their individual capacities.

The parties both conducted Discovery in this matter. Appellant conducted (8) eight different witness depositions. He also served Interrogatories, Admissions, and Production of Documents on Defendants. Appellees conducted (1) witness deposition and served Interrogatories, Admissions, and Production of Documents on Appellant.

Appellee filed a Motion for Summary Judgement in District Court on June 4th, 2021. (Doc. No. 78). Plaintiff filed a response in opposition (Doc. No. 115), to which Defendants

replied (Doc. No. 119). Appellant also had filed (4) four pending Motions before the Court.(Doc. Nos. 120,121,124, and 125).

On February 28th, 2022, the Court ruled that Defendant Board of Regents of Oklahoma Colleges is entitled to summary judgment on Plaintiff's pay discrimination claim under the EPA. (Doc. No. 128). Since the sole federal claim in this action is eliminated, the Court declines to exercise supplemental jurisdiction over the remaining state law claims. **IT IS THEREFORE ORDERED** that the Motion for Summary Judgment filed by Defendant Board of Regents of Oklahoma Colleges, Defendant David Misak, in his individual and official capacities, and Todd Thurman, in his individual and official capacities [Doc. No. 78] is **GRANTED** in part and **DENIED** in part as set forth herein. **IT IS FURTHER ORDERED** that Plaintiff's state law breach of contract, tortious interference with business relations, and tortious interference with prospective economic advantage claims are **DISMISSED** without prejudice. **IT IS SO ORDERED** this 28th day of February 2022. (Doc. No. 128). The Court also **DENIED** Appellant's (4) four pending Motions.(Doc. Nos. 120,121,124, and 125).

Appellant filed his Notice of Appeal on March 25th, 2022 (Doc. No. 133) as to (Doc. No. 128) "Order" on Motion for Summary Judgement. (Doc. No. 129).

The total number of filings in the District Court related to this case is (139) one hundred thirty-nine.

## 2. STATEMENT OF FACTS
## RELEVENT TO THE ISSUES PRESENTED FOR REVIEW

In May 2016, Appellant was told his Alma Mater, Southwestern Oklahoma State University,(Hereinafter S.W.O.S.U.), had posted on their University Website seeking (2) two

paid Graduate Assistant Softball Coaches with benefits. (Doc. No. 115, Ex. 13). Doc. No. 115, Exhibit 13 is the official job posting in which Appellant applied.

The job description was identical for both positions. Both were entry level Coaching positions that paid the same and had the same benefit package. The expected work performed for both positions was the same.

Appellant properly applied on July 13, 2016, for the position of Graduate Assistant Softball Coach for the Softball program at SWOSU.(Doc. No. 115, Ex. 10) Exhibit 10 is Appellant's application for the G.A. coaching position.

Appellant was later contacted by SWOSU Softball Head Coach, Kim Maher about an interview and drove to Weatherford, Ok to be interviewed. After the interview with Coach Maher, she recommended Appellant to Human Resources for hire as a Graduate Assistant.

Plaintiff was contacted by SWOSU Human Resources on July 25, 2016, to notify him that he was the successful candidate for the Position of Graduate Assistant for the Softball Program. Plaintiff was given a conditional offer for employment contingent upon background check results resulting in a clear for hire status.[Doc. No. 115, Ex. 10,p.4,par 1] Plaintiff gave his consent to have a background check to be conducted on him for employment. (Doc. No. 115, Ex. 16). Exhibit 16 is a "Welcome Aboard" email from Jamie Collins, SWOSU Human Resources, to Appellant.

On August 8, 2016, Plaintiff was contacted by Coach Kim Maher, via text, and told to contact Jamie Collins in SWOSU Human Resource Dept. to come in and fill out

paperwork. [Doc. No. 115, Ex. 12] Exhibit 12 is a text message from SWOSU Head Coach, Kim Maher.

Plaintiff spoke to Jamie Collins, SWOSU H.R., again on 8-15-2016 where she told Plaintiff "We are excited to make you a part of SWOSU Bulldog family, come in and sign your Pay Action Form on 8-17-2016 before you go meet Coach Maher and start work recruiting." [Doc. No. 115, Ex. 18] Exhibit 18 is Appellant's AT&T phone records. On 8-15-16 at 1:52 p.m. Appellant spoke with Jamie Collins, SWOSU Human Resources, on her direct line at 580-774-6012 for (5) five minutes. Her phone number is reflected in [Doc. No. 115, Ex. 16]. Her phone number is listed with her contact info. at the bottom of the email.

Plaintiff drove to SWOSU campus and was given his Pay Action Form and other documents by SWOSU H.R. personnel, and he signed all forms on 8-17-2016 and went straight to meet Coach Maher to start work recruiting on SWOSU Campus. (Doc. No. 115, Ex. 1 ¶ 11). Exhibit 1 is Appellant's Affidavit.

Appellant was an employee of SWOSU. First, Appellee's, Board of Regents, used Appellant's name and his title of "Coach" on recruitment materials mailed to student athletes.[Doc. No. 115, Ex. 6, Ex. 7] The title of Coach used by Appellee's, is in direct reference to the position in which Appellant applied for at SWOSU. Secondly, it's clear that Appellant was offered and accepted employment from SWOSU because it's undisputed that Appellant had provided work on Campus for the benefit of the SWOSU Softball Program.

Lastly, when Defendant Thurman, SWOSU Athletic Director, found out on August 18, 2016, that a man had been hired to coach Women's Softball he became very upset and wanted to speak with Appellant.

Appellant was on SWOSU Campus working on August 18, 2016, when contacted by Jamie Collins, SWOSU H.R., and told that the Athletic Director wanted to speak with me. I went to H.R. and Jamie Collins contacted Mr. Thurman via phone. He was immediately rude and was very unhappy. He was unhappy about a male coaching Women's softball and stated to Appellant, "I want you to sign a new, and different agreement to transition to a Baseball Coach, because real men don't coach women's sports." Appellant was shocked by this behavior, ended the phone call, and immediately left SWOSU H.R. office.

Appellant contacted Coach Maher and made her aware of what happened during my telephonic meeting with Athletic Director Thurman. Coach Maher was shocked and said "I'll talk to Thurman and get this straightened out. She further stated, "I'm a brand-new Coach here and don't really know any of these people, WOW."

Appellant was contacted the next day by Kim Maher and Thurman, via phone, to discuss my employment. I told both individuals "I'm not interested in tearing up my pay action form (contract) and coaching Baseball. Thurman stated, "I understand, and we will work this out." Coach Maher and I thought everything was fine moving forward.

Later, Appellant received another call from Thurman advising him that one of the University's major Donors and SWOSU Administration wanted him to hire a certain

female softball coach to make the Donor happy. (Doc. No. 115, Ex. 2, pg.148, ln 14-23) Exhibit 2 is Appellant's Deposition. As a result, Appellant would have to agree to tear up our initial operating agreement (pay action form) and sign a new "volunteer" agreement. This would allow SWOSU to take the pay promised to Appellant and give it to a female Coach. This would double her pay that was posted in the SWOSU job listing. Appellant made it very clear he didn't want to change his paid position to a volunteer. (Doc. No. 115, Ex.2 p. 138, ln 21-p. 140, ln 2 and Ex.4 Pg.2, Par.7). When Appellant refused to be bullied or threatened and agree to be changed to a volunteer, Thurman laughed and fired him.[Doc. No. 37, ¶ 25]. Appellant advised Thurman that he was going to SWOSU H.R. to file a complaint. Thurman laughed and stated, "Misak knows all about the Donor and your situation, he is on board with whatever I decide to do."

Appellant immediately contacted SWOSU H.R. Director Misak, where Misak advised him, he was aware of the situation and that the University would be more comfortable with a woman Softball Coach.[Doc. 37, ¶ 26].

Later that day, Appellant contacted Head Coach Kim Maher and told her I had been fired by Thurman for not changing my employment agreement. She stated that " I'm so sorry that he fired you and all of this has happened, you are welcome here anytime to work Softball camps and clinics." (Doc. No. 115, Ex. 21) Exhibit 21 are notes from David Misak's interview with Coach Maher about the situation. This gives proof that Appellant had done nothing wrong during his employment.

The disturbing thing about all of this is how the Appellee's have lied about Appellant and his character. Appellee's state that Appellant never signed a pay action form of any kind to establish employment. If that were the truth, why did Misak, Thurman, and Jamie Collins all frantically search for the pay action form Appellant signed.

SWOSU Executive Vice President Tom Fagan testified at his deposition that employees from H.R. came to him numerous times looking for Appellant's pay action form. (Doc. No. 115, Ex. 11, p.14, In 17-p.16, In 15). If H.R. thought Appellant never signed a pay action form, why so frantic to find it? They wanted to find it before SWOSU Legal found it and proved that they were the untruthful ones in this matter. Not to mention Appellee's attorney improperly objected to signal to her client to be quiet.

SWOSU employees have had trouble telling the truth in this matter. Kim Maher's Affidavit (Doc. No. 78, Ex. 1, ¶¶ 2 and 3) is full of intentional lies that were easy to debunk on the record.

Number 2. on Kim Maher's Affidavit states,(Doc. No. 78, Ex. 1 ¶ 2) My first choice for graduate assistant was Marsha Cusack (she was the Enid High School head softball coach). I had known Cusack for years and thought she could bring experience and knowledge to SWOSU's softball program. This is not a true statement because Appellant was hired first and started work first. Appellant started his work on August 17, 2016. Marsha Cusack didn't sign her pay action form until August 22, 2016, and started after that.(Doc. No. 78, Ex. 6). This document also shows that all administrators sign the pay action form after it is signed by the employee.

Another lie Kim Maher told was on number 3. Of her affidavit.(Doc. No. 78,Ex.1 ¶3) Ms. Cusack expressed concern that she would not be able to take the graduate assistant position for the pay offered, so I approached Todd Thurman, SWOSU Athletic Director, about whether it was possible to combine the two GA positions in order to pay Cusack more money ($5200 a semester) and move the other posted GA position to an unpaid position with a tuition waiver. Thurman told me he thought SWOSU had been able to do something similar in the past, and he would investigate it. This never occurred because Coach Cusack testified and was very adamant at her deposition that she never asked Kim Maher for, or negotiated in any way, for more money to take the Coaching position she applied for at SWOSU. (Doc. No. 115, Ex.3, P.81, In.10 - P.82, In. 21). These lies were told to try and better their position for Trial. Kim Maher is not a credible individual.

Athletic Director Thurman also lied in his Declaration.(Doc. No. 78, Ex. 2 ¶ 2).

He stated, Kim Maher, our new softball Coach, told me the graduate assistant she was requesting to hire, Marsha Cusack, needed more money to move to Weatherford. Maher asked whether it would be possible to combine the two graduate assistant salaries to pay Cusack more money, and have the other position changed to an unpaid volunteer. I told Coach Maher I thought we had used volunteers in the past, and I would ask. (Doc. No. 78, Ex. 2 ¶ 2). This is not true, Coach Cusack testified on this. (Doc. No. 115, Ex.3, P.81, In.10 - P.82, In. 21). Plaintiff testified during his deposition that Coach Thurman told him that he needed to hire Marsha Cusack because he needed to make a donor happy. Plaintiff's deposition testimony contradicts Kim Maher's statement on her Affidavit. (Doc. No.115,

Ex.2, p.148, In 14-23). These are all false claim by Appellee's to try and justify how Marsha Cusack was paid twice as much money as Plaintiff.

### 3. **STATEMENT OF ISSUES**

#### a. First Issue :

Whether the District Court erred in ruling that Plaintiff failed to establish a prima facia case of pay discrimination under the Equal Pay Act.

### Argument and Authorities

"The Federal Equal Pay Act ("FEPA") prohibits wage discrimination "between employees on the basis of sex … for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions." 29 U.S.C. § 206(d)." Gu v. Boston Police Dept., 312 F.3d 6, 15 (1st Cir. 2002).

Courts have set forth the elements necessary to establish a cause of action for a violation of the Equal Protection Act. "Thus, to establish a prima facie case under the Equal Pay Act, a plaintiff must show: (1) that his or her employer is subject to the Act; (2) that he or she performed work in a position requiring equal skill, effort, and responsibility under similar working conditions; and (3) that he or she was paid less than the employees of the opposite sex providing the comparison. Corning Glass Works, 818 F.2d at 1153 (citation omitted)." Wallace v. Medical Center of LA. at New Orleans, WL 22928789, *5 -6 (E.D.La.,2003).

"To state a claim for relief under the Equal Pay Act, plaintiff must establish a prima facie case of wage discrimination by showing that the employer pays different wages to

employees of the opposite sex for substantially equal work. Corning Glass Works, 417 U.S. at 195, 94 S.Ct. 2223. To be "substantially equal," the jobs need not be identical, but must require similar skills, effort and responsibility performed under similar conditions. 29 U.S.C. § 206(d); Gunther v. County of Washington, 623 F.2d 1303, 1309 (9th Cir.1979), aff'd on other grounds, 452 U.S. 161, 101 S.Ct. 2242, 68 L.Ed.2d 751 (1981); see also EEOC v. Maricopa County Community College District, 736 F.2d 510, 513 (9th Cir.1984)." Wachter-Young v. Ohio Cas. Group , 236 F.Supp.2d 1157, 1161-1162 (D.Or.,2002). See also, Gu v. Boston Police Dept., 312 F.3d 6, 15 (1st Cir. 2002) (To establish a prima facie case for discrimination under FEPA, a plaintiff must establish "that the employer paid different wages to a member of the opposite sex for substantially equal work." Rodríguez v. Smithkline Beecham, 224 F.3d 1, 6 (1st Cir.2000).

"The first element of an EPA claim is whether the employer pays different wages to employees of the opposite sex." Pfeiffer v. Lewis County, 308 F.Supp.2d 88, 98 (N.D.N.Y.,2004).

Appellant was wrongfully terminated By Appellee's and replaced with a female Coach with a salary that was twice the amount Appellee's agreed to pay Appellant for the same position. The job duties were the same. This is a violation of the Equal Pay Act.(Doc. No. 115, Ex. 22, pg.35, ln 4-10) Exhibit 22 is an excerpt from Jamie ,SWOSU H.R., Deposition.

"The second element of an EPA claim is whether the employees perform equal work on jobs requiring equal skill, effort, and responsibility." With regard to the second point, '[a] plaintiff need not demonstrate that her job is identical to a higher paid position, but only must show that the two positions are substantially equal' in skill, effort, and responsibility." Lavin,

239 F.3d at 479 (quoting Tomka v. Seiler Corp., 66 F.3d 1295, 1310 (2d Cir.1995). "[w]hether two positions are 'substantially equivalent' for Equal Pay Act purposes is a question for the jury." Lavin-McEleney, 239 F.3d 476, 480.

Appellant's position is that he was hired as a paid Graduate Assistant Softball Coach by S.W.O.S.U. and started work on August 17th, 2016. Two days later when Appellant refused to change to a non-paid volunteer to satisfy Thurman's illegal plan, he was wrongfully terminated on August 19, 2016.

The parties do agree that Appellant's name and likeness were used by SWOSU in recruiting student athletes. (Doc. No. 115, Ex.6, Ex.7) Also, the parties agree that Appellant was on Campus August 17, 2016, providing work for the benefit of the SWOSU Softball Program. (Ex. 1 ¶ 11 and Ex.2, pg.84, ln 7-p.87, ln 19)

The Appellee's agree Appellant was on Campus working August 17, 2016, but he was never hired by SWOSU or signed any contract or pay action form. The parties agree and the Court found that "Whatever relationship Plaintiff had with SWOSU, whether he was an employee or merely a candidate-for-hire, ended on August 19, 2016.(Doc. No 128, pg.4, par.2)

The Court ruled that Appellant has raised a genuine dispute as to whether he was an employee of SWOSU. (Doc. No.128, pg.6,par. 2) But found that his EPA claim falters elsewhere because he didn't establish a prima facia case of pay discrimination under the EPA. The explanation given was because Appellant's work was not substantially equal to female Coach Cusack's work. In it's ruling the Court stated, "According to Coach Maher, Ms. Cusack completed several tasks related to recruiting (identifying and monitoring potential

recruits), practice (planning and coordinating training sessions), team travel (organizing lodging, transportation, and meals for the team), gameday preparation (scouting opposing teams), and field maintenance (chalking and dragging dirt). Maher Aff. ¶ 4 [Doc. No. 78-1]. Ms. Cusack performed a variety of functions for the softball program; Plaintiff participated in two recruitment tours. Their work was not substantially equal, and Plaintiff has not shown a genuine issue for trial exists on this issue. Plaintiff, therefore, cannot establish a prima facie case of pay discrimination under the EPA. Defendant BROC's motion for summary judgment on Plaintiff's EPA claim is granted.(Doc. No.128, pg.7,par. 2),

Appellant's argument is that the reason the workload was not substantially equal is because Appellant was wrongfully terminated after (3) three days employment without cause. He was wrongfully terminated because the Athletic Director wanted to benefit himself in a greedy and unlawful act. When Appellant stood up for his rights he was lied upon, laughed at, and fired. Coach Cusack was hired after Appellant and was employed for a full year. It would be impossible to compare the (2) two jobs work. Especially, when one employee worked a year, and the other was fired after (3) three days.

During the year Coach Cusack was employed she never participated in or gave any recruitment tours at SWOSU. No documentation has ever been provided to any Court to state otherwise. In the (3) three days Appellant was employed; it was during the off season for Softball. During this time no practice took place, no games took place, no field maintenance took place, and no training whatsoever was taking place. It was the Softball offseason. Only recruiting takes place in the off season. Appellant completed every job task asked of him during his employment and he had no adverse write up for his conduct while employed. Had

Appellant been treated fairly and lawfully, he would have been employed for the year and completed the exact same job tasks as his comparator, Coach Cusack.

Therefore, a reasonable jury could find Appellant proved that Coach Marsha Cusack, (1) received higher wages than Appellant, (2) "for equal work on jobs requiring equal skill, effort, and responsibility," (3) in a job that was "performed under similar working conditions." Appellant also strongly feels that it should be left to a jury to decide if the jobs were comparable under these circumstances. "[w]hether two positions are 'substantially equivalent' for Equal Pay Act purposes is a question for the jury." Lavin-McEleney, 239 F.3d 476, 480.

### b. Second Issue :

Whether the District Court erred by refusing to exercise jurisdiction over Appellant's remaining State claims.

### Argument and Authorities

Appellant disagrees with the District Court's decision because it greatly harms Appellant Pro se after (4) years working through the Federal Court system. For Appellant's claims to now be sent to the State Court will greatly delay justice for Appellant. Due to Covid delays and everything else considered it would be another (3) three years to bring his case in front of a Jury. The State of Oklahoma Court system is still overwhelmed from Covid-19 and mass filings after the Covid surge. This greatly prejudices Appellant because during that huge time lapse witnesses' memories can fade, not to mention witnesses can pass away.

Appellant respectfully requests that his State claims be remanded back to the District Court for Trial.

## 4. Do you think the district court applied the wrong law?

Yes, a Jury should be able to decide the facts and decide if the jobs were substantially equal. "[w]hether two positions are 'substantially equivalent' for Equal Pay Act purposes is a question for the jury." Lavin-McEleney, 239 F.3d 476, 480.

## 5. Did the district court incorrectly decide the facts?

Yes, The District Court didn't consider that Appellant was wrongfully terminated after (3) three days and his comparator was employed for a year. It would be impossible to compare the two employees. Appellant was also unlawfully terminated to hide the Athletic Director's unlawful motives.

## 6. Did the district court fail to consider important grounds for relief?

Unknown

## 7. Do you feel that there are any other reasons why the district court's judgement was wrong?

Yes, because the District Court refused to exercise jurisdiction over Appellant's remaining State claims. Appellant disagrees with this decision because it greatly harms Appellant Pro se after (4) years working through the Federal Court system. For Appellant's claims now to be sent to the State Court will greatly delay justice for Appellant. Due to

Covid delays and everything else it would be another (3) three years to bring to a jury. It was clear to all parties that Trial was inevitable. The parties were just waiting the Court's decision. The scheduling Order was clear that as soon as the ruling on the Summary Judgement was issued, the case would move forward to Trial quickly.

## 8. What action do you want this court to take in your case?

Appellant respectfully requests that this Honorable Court find that before Appellant was wrongfully and unlawfully terminated, his work was substantially equal to Coach Cusack. Along with Appellant's affidavit containing firsthand knowledge of events, Appellant has also provided undisputed evidence that he was on the SWOSU Campus working at the direction of SWOSU Head Softball Coach Kim Maher on August 17, 2016. The University sent recruitment letters and other recruitment materials to student athletes with Appellant's name and likeness to benefit the University. Also, the two Coaches worked together giving two different NCAA recruitment tours to potential athletes.

The above evidence shows genuine disputes between the parties exists and that a jury would need to decide these issues. See Hall v. Bellmon, 935 F.2d 1106, 1111 (10th Cir.1991)(Material factual disputes cannot be resolved at summary judgement based on conflicting affidavits.").

Further, Appellant respectfully requests that this Honorable Court Vacate the District Court's Order granting summary judgement in favor of all Defendants, on all remaining Federal and State claims and remand to the District Court for Trial.

## 9. Do you think the court should hear oral arguments in this case?

Appellant respectfully requests that oral arguments be heard in this case. As a Pro se litigant, I have not been trained in either Legal, technical, or analytical writing. As a result of this, I feel I haven't been able to make the best arguments or properly express myself to the Court. If allowed, Appellant will be properly prepared to orally present his Appeal in an orderly and proficient manner and answer all questions that the Judges may ask about my case. This request is respectfully made in the interest of fairness and justice.

_July 1st, 2022_
**DATE**

_[signature]_
**Signature**

## CERTIFICATE OF SERVICE

I hereby certify that on July 1st, 2022, I sent a copy of the Appellant/Petitioner's Opening Brief to Attorneys Dixie Coffey and Lauren Ray-Morales, at the Oklahoma Attorney's Generals Office, 313 NE 21st street, Oklahoma City, Ok 73105, the last known address, by U.S. First Class Mail.

_July 1st, 2022_
Date

_[signature]_
Signature

## CERTIFICATE OF COMPLIANCE

I certify that the total number of pages I am submitting as my Appellant/Petitioner's Opening Brief is (30) thirty pages or less or alternatively, if the total number of pages exceeds (30) thirty, I certify that I have counted the number of words and the total is 4464 , which is less than 13,000. I understand that if my Appellant/Petitioner's Opening Brief exceeds 13,000 words, my brief may be stricken, and the appeal dismissed.

July 1st, 2022
Date

_____
Signature



PRIORITY MAIL 2-DAY®

EXPECTED DELIVERY DAY: 07/05/22

SHIP TO:
DENVER CO 80257

USPS TRACKING® #
9505 5152 1647 2182 0282 63

FROM:

MARK Pendergraft, Pro Se
P.O. Box 402
Piedmont, OK 73078

TO:

Byron White Courthouse
c/o Court Clerk
1823 Stout Street
Denver, CO 80257