CASE NO. 22-6045

---

UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

---

MARK A. PENDERGRAFT,

Plaintiff,

v.

BOARD OF REGENTS OF OKLAHOMA COLLEGES, DAVID MISAK, in
his Individual Capacity, *et al.,*

Defendants.

---

DEFENDANTS/APPELLEES' RESPONSE BRIEF

---

Appeal of U.S. District Court for the Western District of Oklahoma
Case No. 18-cv-793-D
Judge Timothy D. DeGiusti
Chief United States District Judge

---

ORAL ARGUMENT NOT REQUESTED

---

LAUREN RAY, OBA#22694
DIXIE L. COFFEY, OBA#11876
Assistant Attorneys General
Oklahoma Attorney General's Office
Litigation Division
313 NE 21st Street
Oklahoma City, Oklahoma 73105
Telephone: (405) 521-3921   Facsimile: (405) 521-4518
*Attorney for Defendants*
August 2, 2022

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................. i

TABLE OF AUTHORITIES ......................................................... iii

GLOSSARY OF ACRONYMS ...................................................... vi

LIST OF ATTACHMENTS ........................................................... vi

DEFENDANTS/APPELLEES' RESPONSE BRIEF ........................... 1

PRIOR OR RELATED APPEALS .................................................. 1

JURISDICTIONAL STATEMENT .................................................. 1

STATEMENT OF THE ISSUES .................................................... 2

STATEMENT OF THE CASE ....................................................... 2

STATEMENT OF THE FACTS ..................................................... 3

PROCEDURAL BACKGROUND .................................................... 7

STANDARD OF REVIEW ............................................................ 7

ARGUMENT AND AUTHORITY .................................................. 9

PROPOSITION I:

      THE DISTRICT COURT PROPERLY HELD THAT APPELLANT
      FAILED TO PROVE A PRIMA FACIE CASE FOR VIOLATION OF
      THE EQUAL PAY ACT ........................................................... 9

      *A. Appellant was never an employee of SWOSU* ........................... 9

      *B. Appellant cannot show he performed equal work under the Equal Pay Act* ............... 12

      *C. Cusack's pay was not based upon her sex* ................................ 17

**PROPOSITION II:**

    **THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN DECLINING TO EXERCISE SUPPLEMENTAL JURISDICTION OVER APPELLANT'S REMAINING STATE CLAIMS** ......................... 20

**CONCLUSION** ........................................................................................... 21

**STATEMENT ON ORAL ARGUMENT** .................................................... 21

**CERTIFICATE OF COMPLIANCE** ......................................................... 22

**CERTIFICATE OF DIGITAL SUBMISSION** ......................................... 22

**CERTIFICATE OF SERVICE** ................................................................... 23

# TABLE OF AUTHORITIES

## CASES

*Angorge v. Williams-Sonoma, Inc.,*
70 F.App'x 500 (10th Cir. 2003) ........................................................... 18

*Argo v. Blue Cross and Blue Shield of Kan., Inc.,*
452 F.3d 1193 (10th Cir. 2006) ............................................................. 12

*Board of Regents v. Dawes,*
522 F.3d 380 (8th Cir. 1975) ................................................................. 9

*Brickey v. Emps. Reassurance Corp.,*
293 F.Supp.3d 1227 (D. Kan. 2003) ..................................................... 18

*Burlington N. & Santa Fe Ry. Co. v. White,*
548 U.S. 53 (2006) ....................................................................... 14, 16

*Carnegie-Mellon Univ. v. Cohill,*
484 U.S. 343 (1988) ............................................................................. 20

*Cnty of Wash. v. Gunther,*
452 U.S. 161 (1983) ............................................................................. 17

*Daniels v. United Parcel Serv., Inc.,*
797 F.Supp.2d 1163 (D. Kan. 2011) *aff'd,* 701 F.3d 620 (10th Cir. 2012) ..................... 16

*EEOC v. Aetna Ins. Co.,*
616 F.2d 719 (4th Cir. 1980) ................................................................. 18

*Fields v. City of Tulsa,*
753 F.3d 1000 (10th Cir. 2014) .............................................................. 8

*First Unitarian Church of Salt Lake City v. Salt Lake City Corp.,*
308 F.3d 1114 (10th Cir. 2002) ........................................................... 7, 8

*Fisher v. Vassar Coll.,*
70 F.3d 1420 (2d Cir. 1995), *on reh'g in banc,* 114 F.3d 1332 (2d Cir. 1997) ................. 16

*Hall v. Bellmon,*
935 F.2d 1106 (10th Cir. 1991) ................................................................ 12

*Hancock v. Am. Tel. & Tel. Co.,*
701 F.3d 1248 (10th Cir. 2012) .................................................................. 8

*Hill v. SmithKline Beecham Corp.,*
393 F.3d 1111 (10th Cir. 2004) ................................................................ 16

*Hornaday Mfg. Co. v. Doubletap, Inc.,*
746 F.3d 995 (10th Cir. 2014) .................................................................... 8

*Horner v. Mary Inst.,*
613 F.2d 706 (8th Cir. 1980) .................................................................... 18

*Lavin-McEleney v. Marist Coll.,*
239 F.3d 476 (2d Cir. 2001) ............................................................... 15, 16

*Lewis v. D.R. Horton, Inc.,*
375 F.App'x 818 (10th Cir. 2010) ............................................................ 14

*Mickelson v. N.Y. Life Ins. Co.,*
460 F.3d 1304 (10th Cir. 2006) ................................................................ 17

*Miller v. Auto Club of N.M., Inc.,*
420 F.3d 1098 (10th Cir. 2005) ........................................................... 14, 16

*Nazinitsky v. Integris Baptist Med. Ctr., Inc,.*
852 F.App'x 365 (10th Cir. 2021) ............................................................ 19

*Nielander v. Bd. of County Comm'rs,*
582 F.3d 1155 (10th Cir. 2009) ............................................................. 8, 20

*Nulf v. Int'l Paper Co.,*
656 f.2d 553 (10th Cir. 1981) .................................................................. 13

*Pauly v. White,*
874 F.3d 1187 (10th Cir. 2017) ................................................................ 12

*Piercy v. Maketa,*
480 F.3d 1193 (10th Cir. 2007) ........................................................... 14, 15

*Riser v. QEP Energy,*
776 F.3d 1191 (10th Cir. 2015) ........................................................... 9

*Robbin v. City of Santa Fe.,*
583 F.App'x 858 (10th Cir. 2014) ........................................................ 21

*Rocky Mountain Christian Church v. Bd. of Cty. Comm'rs,*
613 F.3d 1229 (10th Cir. 2010) ........................................................... 8

*Salguero v. City of Clovis,*
366 F.3d 1168 (10th Cir. 2004) .......................................................... 12

*Smith v. City of Enid ex rel., Enid City Comm'n,*
149 F.3d 1151 (10th Cir. 1998) .......................................................... 20

*Sprague v. Thorn Ams., Inc.,*
129 F.3d 1355 (10th Cir. 1997) ..................................................... 13, 16

*Strag v. Bd. of Trs.,*
55 F.3d 943 (4th Cir. 1995) ........................................................... 15, 16

*Varley v. Superior Chevrolet Auto. Co.,*
1997 WL 161942 (D. Kan. Mar. 21, 1997) ......................................... 18

*Wheeler v. Hurdman,*
825 F.2d 257 (10th Cir. 1987) ............................................................ 9

## STATUTES

28 U.S.C. § 1291 ................................................................................... 1

28 U.S.C. § 1331 ................................................................................... 1

28 U.S.C. § 1343 ................................................................................... 1

28 U.S.C. § 1367(c)(3) .................................................................... 20, 21

29 U.S.C. § 203(4) ................................................................................ 9

29 U.S.C. § 203(4)(A) ......................................................................... 10

29 U.S.C. § 206(d)(1) ................................................................9, 12, 17

29 U.S.C. § 206(d)(1)(iv) ............................................................ 18

## RULES

Fed. R. Civ. P. 56(c) .................................................................. 8

Fed. R. App. P. 34(a)(2)(c)............................................................ 21

## GLOSSARY OF ACRONYMS

SWOSU ..........................................................Southwestern Oklahoma State University

ROA ..............................................................................Record on Appeal

GA ...............................................................................Graduate Assistant

HR ...............................................................................Human Resources

EPA ..............................................................................Equal Pay Act

NFCA.............................................................National Fast Pitch Coaches Association

## LIST OF ATTACHMENTS

Attachment 1.....................................................................Order

Attachment 2...................................................................Judgment

# UNITED STATES COURT OF APPEALS
# FOR THE TENTH CIRCUIT

MARK A. PENDERGRAFT,

            Plaintiff/Appellant,

v.

BOARD OF REGENTS OF OKLAHOMA COLLEGES, *et al.,*

            Defendants/Appellees.

**Case No. 22-6045**

## DEFENDANTS/APPELLEES' ANSWER BRIEF

Defendants/Appellees Southwestern Oklahoma State University ("SWOSU"), David Misak, and Todd Thurman respectfully submit this Brief in response to Appellant Mark Pendergraft's Opening Brief.

## PRIOR OR RELATED APPEALS
## (LOCAL RULE 28.2(C)(1) STATEMENT)

There are no prior or related appeals.

## JURISDICTIONAL STATEMENT

The United States District Court for the Western District of Oklahoma appropriately exercised jurisdiction over this matter in which Appellant sought relief pursuant to the Equal Pay Act. *See* 28 U.S.C. §§ 1331 and 1343. This Court has jurisdiction to review the District Court's rulings. 28 U.S.C. § 1291 The District Court granted summary judgment in favor of Appellees on February 28, 2022. (ROA, Vol. III at 265-272). From this ruling, Appellant timely commenced the instant appeal.

## STATEMENT OF THE ISSUES

**I. WHETHER THE DISTRICT COURT ERRED IN FINDING THE APPELLANT FAILED TO PROVE A *PRIMA FACIE* CASE OF VIOLATION OF THE EQUAL PAY ACT.**

**II. WHETHER THE DISTRICT COURT ABUSED ITS DISCRETION IN DECLINING TO EXERCISE SUPPLEMENTAL JURISDICTION OVER THE REMAINING STATE LAW CLAIMS.**

## STATEMENT OF THE CASE

Appellant single-handedly derailed his opportunity to be a part of the SWOSU softball coaching staff. After the head coach recommended that SWOSU hire Appellant as a Graduate Assistant ("GA"), Appellant displayed significant episodes of dishonesty and impatience, resulting in SWOSU withdrawing the offer. Angered by SWOSU's decision not to hire him, Appellant later called SWOSU HR Director Misak ("Misak") to complain about not being hired.

In his call to Misak, Appellant never mentioned (1) any meeting with Athletic Director Thurman ("AD Thurman" or "Thurman"), (2) that Thurman discussed a donor's concerns, or (3) that Thurman terminated him to allow SWOSU to hire a female GA assistant. He merely complained about not being hired. (ROA, Vol. II at p. 168, ln. 2-11; p. 169, ln. 22 – p. 170, ln. 7). Why did Appellant not mention these? Because they never occurred.  AD Thurman never met with Appellant, and never had a discussion with Appellant about school donors wanting SWOSU to hire a female softball assistant, signing an employment contract, or terminating Appellant. (*Id.* at p. 156). Despite this, Appellant filed this lawsuit based upon these fabrications and misrepresentations.

## STATEMENT OF THE FACTS

In June of 2016, Coach Kim Maher ("Maher") became the new head softball coach at SWOSU. In mid-June, Marsha Cusack ("Cusack"), head softball coach at Enid High School, applied for one of SWOSU's two posted positions for graduate assistants ("GA"). Maher wanted to hire Cusack because she had worked with Cusack in the past and knew her skills and experience could greatly benefit the SWOSU program. Coach Maher was concerned that Cusack would not be able to take the GA position for the salary offered ($2800/semester, and tuition waiver). Coach Maher asked Athletic Director ("AD") Thurman ("Thurman") if the salary for the two posted GA positions could be combined to pay Cusack more money, and the second GA position to be an unpaid volunteer position with a tuition waiver. Thurman indicated he thought this had been done in the past, but it would have to be approved by Human Resources ("HR"). (*See* ROA, Vol. II at p. 152, ¶ 3; *see also* ROA, Vol. II at p. 155, ¶ 2 and pp. 221-223). The administration approved the plan to combine the graduate assistant stipends to pay Cusack, so Cusack's pay action form was signed and approved by all necessary SWOSU administrators, as well as Cusack, and soon thereafter Cusack began her GA duties. (*Id.* at p. 153, ¶ 4; p. 199).

In late June or early July, after Cusack had been offered the first GA position, Appellant contacted Coach Maher about the remaining GA position. Maher explained that the position would be an unpaid volunteer position with a tuition waiver. Appellant told Maher this was acceptable to him because he just wanted to get some collegiate

coaching experience. (*Id.* at p. 153, ¶¶ 5-6; pp. 218-220). With full knowledge that the position was an unpaid coaching position, Appellant applied for the GA position. (*Id.* at pp. 224-230). After meeting with Appellant, Coach Maher recommended to AD Thurman that SWOSU hire him for the unpaid GA position. Maher's recommendation went to HR Director David Misak ("Misak"), and was forwarded to Executive Vice President Fagan and Provost South for the necessary approvals. (*Id.* at p. 155, ¶ 5; p. 177, ln. 25 – p. 178, ln. 8). However, Misak had not yet approved the recommendation because he was unsure whether a volunteer could receive a tuition waiver. (*Id.* at p. 166, ln. 4-11).

While waiting for the unpaid position to be approved, Appellant asked Coach Maher what he could do to help with the softball team, so she solicited his help with campus tours of two potential SWOSU softball recruits on August 17, 2016. The next day, August 18, 2016, Appellant went to the SWOSU Human Resources ("HR") Office and told Employment Specialist Jamie Collins he was there to complete new hire paperwork. Collins was caught off guard because nobody had told Appellant his paperwork was ready to be signed. In fact, there was no paperwork to sign because a final decision had not been made regarding his unpaid position. (*Id.* at p. 192, ln. 1-11).

When Collins contacted AD Thurman, he stated they were going to use Appellant as a volunteer. (*Id.* at p. 196, ln. 9-17; pp. 203-205). Appellant responded that Coach Maher would have to find someone else to have the position as he did not want

to be listed as a volunteer and left the HR office. (*Id.* at p. 194, ln. 8-11; pp. 203-205; pp. 217, ln. 5-17).

Appellant returned to the HR office about ten minutes later and stated his attorney advised that due to wage and labor laws, he had to be paid a reasonable amount. He suggested $200, but his attorney advised him $800 would be a reasonable amount. (*Id.* at pp. 203-205). Collins informed Appellant that with or without pay, the position would not be an assistant coach, but rather a graduate assistant. (*Id.* at p. 197, ln. 7-17; pp. 203-205). Appellant said he was okay with the position being a graduate assistant position if he was not called a volunteer. When Collins told Appellant that HR Director Misak was unavailable, Appellant said Coach Maher would have to find someone else. (*Id.* at p. 193, ln. 13 – p. 194, ln. 20; pp. 203-205).

The next morning Appellant left Coach Maher a voicemail telling her it was not going to work out and wished her the best of luck. (*Id.* p. 153, ¶ 8). Later that day, AD Thurman and Coach Maher called Appellant to find out the problem. Appellant conveyed he was concerned about the volunteer title, as he wanted to be an assistant coach. (*Id.* at ¶ 9; pp. 218-220; pp. 221-223). Appellant was not concerned about not getting paid. (*Id.* at pp. 221-223). Thurman informed Appellant that regardless of whether the position was paid, Appellant would be referred to as an assistant coach. *Id.* Appellant also voiced concerns about what would occur if he were injured while volunteering and reiterated that pay was not an issue for him. However, Appellant told Thurman "that HR guy suggested $800." *Id.* (Misak, the only male in the HR

department, had never spoken to Appellant nor suggested to anyone that Appellant be paid. In fact, Misak only spoke with Appellant on the phone after Appellant had been informed he was not hired. (*Id.* at p. 167, ln. 10 - p. 168, ln. 11). Thurman said he would check into whether Appellant would be covered in the case of an injury. (*Id.* at pp. 221-223).

Later that day, Thurman spoke with Collins and realized they were getting different stories. These inconsistencies caused concern and raised a red flag regarding hiring Appellant. (*Id.* at p. 154, ¶ 10; pp. 218-221). This concern, along with the unresolved issue of whether an unpaid volunteer could receive a tuition waiver, caused Misak and Thurman to decide to not fill the second GA position. (*Id.* at p. 167, ln. 8 – 168, ln. 1; p. 180, ln. 17-20). That day, Coach Maher informed Appellant there were too many inconsistencies in Appellant's conversations with SWOSU staff, so SWOSU was not going to hire him for the GA position. (*Id.* at p. 154, ¶ 11).

Subsequently, Appellant contacted HR Director Misak with complaints about not being hired, which prompted Misak to interviewed Thurman, Maher, and Collins in early September to determine what had occurred. Misak concluded SWOSU had properly handled the matter and made the correct decision to not hire Appellant. (*Id.* at p. 168, ln. 2-11; pp. 203-205; pp. 218-223). During Appellant's call to Misak, Appellant did not mention any meeting or conversation with AD Thurman regarding a donor, nor claim Thurman terminated him to allow SWOSU to hire a female GA assistant. (*Id.* at p. 169, ln. 2-11; p. 169, ln. 22 – p. 170, ln. 7). No such meeting or discussion ever

occurred (*id.* at p. 156), yet Appellant bases his claims on this fabricated meeting. (ROA, Vol. I, p. 234, ¶¶ 24-25 – p. 235, ¶ 26).

## PROCEDURAL BACKGROUND

On August 12, 2018, Appellant filed suit in the Western District of Oklahoma against ("SWOSU"), Todd Thurman, and David Misak. Following a series of amendments, motions to dismiss, and court rulings, Appellant's remaining claims were (1) violation of the Equal Pay Act against SWOSU, (2) breach of contract against SWOSU, (3) tortious interference with business relations against the two individual defendants Misak and Thurman, and (4) tortious interference with prospective economic advantage against the individual defendants. Appellees filed their Motion for Summary on June 4, 2021. (ROA, Vol. II, pp. 121-254). On February 28, 2022 the District Court granted Appellee's summary judgment on the Equal Pay Act claim, declined supplemental jurisdiction on the remaining state law claims and entered judgment in favor of Appellees. (ROA, Vol. III at pp. 264-273). Appellant now seeks reversal of each part of the District Court's decision.

## STANDARD OF REVIEW

The Tenth Circuit reviews an appeal from an order granting summary judgment de novo, applying the same standard as the district court. *First Unitarian Church of Salt Lake City v. Salt Lake City Corp.*, 308 F.3d 1114, 1120 (10th Cir. 2002). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine

issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Id.* (quoting Fed. R. Civ. P. 56(c)). The appellate court reviews the factual records and all reasonable inferences in the light most favorable to the party opposing summary judgment. *See First Unitarian Church*, 308 F.3d at 1120; *see also Fields v. City of Tulsa*, 753 F.3d 1000, 1008 (10th Cir. 2014).

Even if the appellate court does not agree with the district court's reasoning for its decision, the appellate court can affirm the district court's ruling on alternative grounds. *See Hornaday Mfg. Co. v. Doubletap, Inc.*, 746 F.3d 995, 1005 n.8 (10th Cir. 2014) ("We are not required to restrict ourselves to the district court's stated reasoning, and we may affirm for any reason supported by the record.").

The Tenth Circuit reviews a denial of supplemental jurisdiction for abuse of discretion. *Nielander v. Bd. of County Comm'rs*, 582 F.3d 1155, 1172 (10th Cir. 2009). Abuse of discretion occurs where the district court clearly erred or ventured beyond the limits of permissible choice under the circumstances." *Hancock v. Am. Tel. & Tel. Co.*, 701 F.3d 1248, 1262 (10th Cir. 2012). A district court also abuses its discretion when it "issues an arbitrary, capricious, whimsical, or manifestly unreasonable judgment." *Rocky Mountain Christian Church v. Bd. of Cty. Comm'rs*, 613 F.3d 1229, 1239-40 (10th Cir. 2010).

## ARGUMENT AND AUTHORITY

## PROPOSITION I: THE DISTRICT COURT PROPERLY HELD THAT APPELLANT FAILED TO PROVE A *PRIMA FACIE* CASE FOR VIOLATION OF THE EQUAL PAY ACT

The Equal Pay Act ("EPA") was created to prohibit wage discrimination against women. But the language of the statute is broad enough to permit recovery by a male alleging sex-based wage discrimination. *See Board of Regents v. Dawes*, 522 F.2d 380 (8th Cir. 1975). To show a prima facie claim under the equal pay act claim, plaintiff must prove (1) he was performing work which was substantially equal to that of the female employee considering the skills, duties, supervision, efforts, and responsibilities of the job; (2) the conditions where the work was performed were basically the same and (3) the female employee was paid more under such circumstances. *Riser v. QEP Energy*, 776 F.3d 1191, 1200 (10th Cir. 2015). Work is "substantially equal" under the EPA if it requires "equal skill, effort, and responsibility." 29 U.S.C. § 206(d)(1).

### A. *Appellant was never an employee of SWOSU.*

The EPA states that "[n]o employer having *employees*…" 29 U.S.C. § 206(d)(1). An employee means any individual employed by an employer. 29 U.S.C. § 203(4). To assert a claim under the EPA, Appellant must show that he is an employee. *See Wheeler v. Hurdman*, 825 F.2d 257 (10th Cir. 1987). Plaintiff has failed to prove he was an employee of SWOSU. The definition of "employee" does not include any individual

who volunteers to perform services for a public agency, which is a political subdivision of a State. 29 U.S.C. § 203(4)(A).

Appellant claims that he was wrongfully terminated by SWOSU and replaced with a female coach with a salary that was twice the amount SWOSU agreed to pay Appellant, in violation of the EPA. (ROA, Vol. I, p. 237, ¶ 31). Appellant was never hired, and thus, was never an employee of SWOSU. (ROA, Vol. II at p. 159, ln. 19 – p. 160, ln. 10; p. 223; and p. 232, ¶ 5). While HR Director Misak was trying to determine whether SWOSU could provide a tuition waiver to an unpaid volunteer, inconsistencies in Appellant's statements came to light, raising red flags about hiring him for the GA position. Due to these inconsistencies about conversations with SWOSU staff on August 18 and 19, 2016, SWOSU decided not to hire Appellant, and to remove the second GA position. (*Id.* at p. 154, ¶ 11; p. 177, ln. 25-p. 179, ln. 5; p. 180, ln. 12-20; p. 223). Based upon Coach Maher's request and recommendation, Misak and Thurman had previously made the decision to hire Marsha Cusack for the first GA position. (*Id.* at p. 180, ln. 21-25).

When Coach Maher initially recommended hiring Appellant as un unpaid Graduate Assistant with a tuition waiver, SWOSU initiated a background check, as was customary for potential new hires and volunteers. (*Id.* at p. 161, ln. 19-25 and p. 184, ln. 5-12; p. 185, ln. 16 – p. 186, ln. 3). When Appellant passed the background check, the on-line application system created a Proposed Pay Action form. (*Id.* at p. 188, ln. 1-17 – p. 189, ln. 14; p. 190, ln. 14-24). The proposed Pay Action form designated Appellant

as an unpaid volunteer, with a tuition waiver, but was never approved, and therefore never given to Appellant to sign. (*Id.* at p. 187, ln. 18 – p. 189, ln 14). The proposal was under review by Misak to determine whether this would even be an option, as it was unclear if a volunteer could receive the tuition waiver. (*Id.* at p. 166, ln. 6-11).

At no point was any paperwork signed by the parties to create an employment contract for Appellant. Appellant could not become an employee of SWOSU until the paperwork had been completed in HR and signed by all parties. Despite Appellant's allegations to the contrary, he never signed an employment contract or a pay action form, and has presented absolutely no credible evidence to suggest otherwise. Only after the Pay action form is approved by all the necessary SWOSU administrators is it printed for the potential employee (here, Appellant) to sign. The proposed pay action form created for Appellant was never approved by the necessary SWOSU administrators, and therefore, was never submitted to Appellant for his signature. (ROA, Vol. II at p. 177, ln. 25-p. 178, ln. 8, p. 179,  ln. 3-13; p. 187, ln 16 – p. 189 ln. 14). In contrast, Marsha Cusack's pay action form was approved, then submitted to Cusack for her signature, and finally signed by HR Director Misak, evidencing her hiring. (*Id.* at pp. 199-202).

Maher knew Appellant was never hired by SWOSU. (ROA, Vol. III at p. 219, ln. 17-18). Maher would never hire Appellant because he is a loose cannon, would be a liability to her team, and she was concerned he would throw a tantrum if he did not get his way. *Id.* at p. 222, ln. 4-17; p. 223, ln. 3-17.

Appellant's only "evidence" that SWOSU hired him as an employee is his own self-serving affidavit and testimony, both of which are completely unsupported by any credible evidence. The Tenth Circuit has held, "the court may not simply accept what may be a self-serving account…[r]ather, it must also look at the circumstantial evidence that, if believed, would tend to discredit [the plaintiff's] story, and consider whether this evidence could convince a rational factfinder…" that Plaintiff lacks evidentiary support for his claims. *Pauly v. White*, 874 F.3d 1197, 1218 (10th Cir. 2017). To survive summary judgment, "*conclusory and self-serving affidavits are not sufficient.*" *Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991) (emphasis added). Assertions in an affidavit that are not supported in the record by corroborating evidence are insufficient to create a genuine question of material fact precluding summary judgment. *Salguero v. City of Clovis*, 366 F.3d 1168, 1177 n. 4 (10th Cir. 2004). At the summary judgment stage, statements of mere belief in an affidavit must also be disregarded. *Argo v. Blue Cross and Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1200 (10th Cir. 2006). Appellant was never an SWOSU employee because he was never hired by SWOSU. At most, he served as a volunteer to the softball program, which is not covered under the EPA.

### B. *Appellant cannot show he performed equal work under the Equal Pay Act.*

Appellant cannot prove he performed equal work to Cusack. Work is "substantially equal" for purposes of the EPA if it requires "equal skill, effort, and responsibility." 29 U.S.C. § 206(d)(1). Jobs that are merely alike or comparable are not

"substantially equal" for purposes of the EPA. *Sprague v Thorn Ams., Inc.*, 129 F.3d 1355, 1364 (10th Cir. 1997); *see also Nulf v. Int'l Paper Co.,* 656 F.2d 553, 560 (10th Cir. 1981). The Tenth Circuit does not "construe the 'equal work' requirement of the EPA broadly, and [has] stated that failure to furnish equal pay for 'comparable work' or 'like jobs' is not actionable." *Sprague v. Thorn Americas, Inc.*, 129 F.3d 1355, 1364 (10th Cir. 1997).

Coach Maher hired Marsha Cusack because of her extensive skills and vast coaching experience. Coach Cusack actively participated in recruiting - identifying and monitoring potential student athletes. (ROA, Vol. II at p. 153, ¶ 4). Cusack assisted in the daily design and structure of practice, assessed the current individual's and team's strengths and weaknesses, and helped with conditioning and skill development. *Id.* Cusack assisted with a variety of travel details, including organizing hotel, transportation, and meals while on the road. *Id.* Cusack's game day preparation included scouting opposing teams and creating a scout report, as well as preparing the field for games, including chalking, dragging dirt, and setting up. *Id.* Coach Cusack also made sure the equipment was organized, accounted for, and properly stored after the season. *Id.* Cusack also helped organize and run the various softball camps and clinics. *Id.* Additionally, Cusack assisted Coach Maher in any other duties as necessary, including discipline of players and collaboration of ideas. *Id.* Coach Cusack was able to perform all of these tasks due to her coaching skills and many years of coaching experience.

Appellant did not perform any of the duties Cusack performed, nor was he qualified to perform most of these duties, due to his complete lack of coaching

experience. To satisfy a prima facie case, "there must be evidence that [Appellant] performed substantially all the duties of the higher-paid co-worker," and not merely some duties. *Lewis v. D.R. Horton, Inc.,* 375 F.App'x 818, 823 (10th Cir. 2010); *see also Miller v. Auto Club of N.M., Inc.,* 420 F.3d 1098, 1119 (10th Cir.2005) *abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 126 S. Ct. 2405 (2006) ("[T]he record makes clear that while Ms. Miller did perform some of the duties that were included in the newly created post, she did not perform all of those duties. She simply has not made a *prima facie* case that the jobs were substantially similar."). At most, Appellant assisted with two campus recruiting tours. He did not assist with any practices, games, training or field maintenance. In contrast, Coach Cusack was significantly involved in each of these tasks, as well as a multitude of other coaching duties.

Appellant claims he "scouted" by looking through "his books," but no longer has these books. Appellant also claims he went over different logs of players he knew were available. (*Id.* at p. 211, ln. 9-13). However, Appellant never contacted any players about SWOSU. (*Id.* at ln. 7-23). Appellant also claims he observed players but couldn't state where he went or what he did. (*Id.* at p. 212, ln. 11-15). There is no evidence in the record detailing any of these allegations, or how they were substantially equivalent to Coach Cusack's work. *See Lewis v. D.R. Horton, Inc.,* 375 F. App'x 818, 824 (10th Cir. 2010). Without any details or specific facts, Appellant's general and vague statements are insufficient to prove equal work. *Id., see Piercy v. Maketa,* 480 F.3d 1192, 1197-98

(10th. Cir. 2007) ("When a party relies on affidavit evidence, it may be insufficient to create a triable fact if it is nonspecific or otherwise non-responsive, vague, conclusory, or self-serving.").

Appellant mistakenly claims "the parties do agree that Appellant's name and likeness were used by SWOSU in recurring student athletes." and "the parties agree that Appellant was on campus August 17, 2016, providing work for the benefit of the SWOSU softball program." The only assistance Appellant possibly provided to the softball program was when he accompanied Coach Maher on campus tours for two potential recruits for a few hours. SWOSU's admission office gave thee admission tours, not Coach Maher or Appellant, but they were permitted to follow along with the tour. (ROA, Vol. III at p. 207, ln. 11 – p. 208, ln. l). Appellant "tagged along" with Coach Maher on the athletic facility tours to learn about the school facilities. (*Id.* at p. 208, ln. 24 – p. 209, ln. 25). The District Court properly held that Appellant did not perform work that was substantially equal to Coach Cusack's work. (*Id.* at pp. 264-272).

To support his argument that the District Court erred in granting summary judgment, Appellant relies solely on a brief quote from a Second Circuit decision, *Lavin-McEleney v. Marist Coll.,* 239 F.3d 476, 479 (2d Cir. 2001): "Whether two positions are substantially equivalent for Equal Pay Act purposes is a question for the jury". *Lavin* dealt with an appeal of a jury trial, in which the court found the plaintiff had presented substantial information at trial for a jury to determine that the two job positions at issue were substantially equivalent. *Id.* at 480-481. The *Lavin* court distinguishes its ruling

from other cases where "the plaintiff had offered insufficient evidence that jobs…were substantially equal." *Id., (see Fisher v. Vassar Coll.*, 70 F.3d 1420, 1452 (2d Cir. 1995), on reh'g in banc, 114 F.3d 1332 (2d Cir. 1997), noting the plaintiff had produced no evidence that she performed work equivalent to that of her comparator; and *Strag v. Bd. of Trs.*, 55 F.3d 943, 948 (4th Cir. 1995)), rejecting a comparison between plaintiff's mathematics department and a male professor's biology department, absent a showing that the two positions entailed substantially equal skill, effort, and responsibility. Similarly, *Lavin* is distinguishable from the case at hand because Plaintiff has provided no evidence that he performed work substantially equivalent to work performed by Coach Cusack.

In the Tenth Circuit, if Plaintiff fails to make a *prima facie* case that jobs are substantially similar, summary judgment is appropriate. *Daniels v. United Parcel Serv., Inc.,* 797 F. Supp. 2d 1163, 1192 (D. Kan. 2011), *aff'd,* 701 F.3d 620 (10th Cir. 2012), *Sprague v. Thorn Americas, Inc.,* 129 F.3d 1355, 1365 (10th Cir. 1997), *Miller v. Auto. Club of New Mexico, Inc.,* 420 F.3d 1098, 1119 (10th Cir. 2005); *overruled on other grounds by Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006); *Hill v. SmithKline Beecham Corp.*, 393 F.3d 1111, 1116 (10th Cir. 2004). Where a plaintiff fails to produce evidence at the summary judgment stage that his job functions were substantially similar or that he performed substantially the same tasks, his EPA claim must fail. *Sprague,* 129 F.3d at 1364.

Plaintiff has failed to state a prima facie case because Plaintiff produced no evidence that his role was substantially equal or that he performed substantially the same tasks as Coach Cusack. It is undisputed that Appellant never performed work that was "substantially equal" to the work Coach Cusack performed as a GA during the 2016-2017 school year. Appellant cannot prove the first element of his EPA claim, and therefore the District Court did not err in granting summary judgment.

### C.  Cusack's pay was not based upon her sex.

Even if Appellant had proven his prima facie case, his EPA claim would still fail because SWOSU did not base Cusack's pay on her gender. If a plaintiff proves a prima facie case, the defendant must show the pay disparity was justified by one of four permissible reasons: "(i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex." 29 U.S.C. § 206(d)(1); *see also Cnty. of Wash. v. Gunther*, 452 U.S. 161, 168, 101 S. Ct. 2242 (1981). To meet this burden, an employer must "submit evidence from which a reasonable factfinder could conclude not merely that the employer's proffered reasons could explain the wage disparity, but that the proffered reasons do in fact explain the wage disparity." *Mickelson v. N.Y. Life Ins. Co.*, 460 F.3d 1304, 1312 (10th Cir. 2006)(citation omitted).

"Courts have determined that an individual's experience, market value, management potential and former salary are 'factors other than sex' as defined under

29 U.S.C. § 206(d)(1)(iv), and thus permit an employer to pay higher salaries based on these factors." *Brickey v. Emps. Reassurance Corp.,* 293 F.Supp.2d 1227, 1233 (D. Kan. 2003), quoting *Varley v. Superior Chevrolet Auto. Co.,* No. 96–2119–EEO, 1997 WL 161942, at *11 (D.Kan. Mar.21,1997) (citing *EEOC v. Aetna Ins. Co.,* 616 F.2d 719, 726 (4th Cir.1980); *Horner v. Mary Inst.,* 613 F.2d 706, 714 (8th Cir.1980)); *see also Angove v. Williams–Sonoma, Inc.,* 70 F.App'x 500, 508 (10th Cir.2003).

As discussed at length above, SWOSU hired Coach Cusack due to her outstanding coaching skills and significant experience. Coach Maher requested that Cusack receive a larger salary, and the second GA position be revised to an unpaid/ volunteer GA position, with the tuition waiver. (ROA, Vol. II at p. 152, ¶¶ 2-3; p. 218). Under the EPA, experience in the market constitutes a factor other than sex. Appellant had never coached collegiate or high school athletes. His minimal softball coaching experience included minor assistance with youth travel teams. Yet he is comparing himself to a coach with numerous years of coaching experience.

At the time of her application in 2016, Cusack had been the head softball coach at Enid Public Schools since 2010. (*Id.* at pp. 234-248). Cusack has been a softball Instructor and Consultant for the Northwest Summer League in Okeene, Oklahoma, where she had coached pitching, hitting, bunting, and slapping since 2010. From August 2008 to May 2010 Cusack was the head high school softball coach at Okeene Public Schools. *Id.* In 2008, Cusack was the interim head softball coach for Langston University where she was involved in recruiting, budgets, and coaching. From August

2007 to March of 2008, Cusack was the Assistant Softball coach for Okeene Public Schools. Additionally, Cusack was a member of many organizations, including Oklahoma High School Fast Pitch Coaches Association, National Fast Pitch Coaches Association, as well as previously being a part of NFCA. *Id.* Cusack was the Region I Coach of the year in 2012. *Id.* Cusack also had experience playing collegiate softball, as well as high school softball. *Id.*

In *Nazinitsky v. INTEGRIS Baptist Med. Ctr., Inc.,* 852 F.App'x 365, 368 (10th Cir. 2021) , this Court found the reason for paying a first year physician less than a seventh year physician was based on experience and therefore based on factors other than sex: "No reasonable jurors would find other than that relative experience explains the remaining pay differential."

Appellant's qualifications were nowhere near the skills and experience that Cusack possessed. Appellant's resume and application do not list any coaching or playing experience. (ROA, Vol. II at pp. 224-230). Appellant never played baseball or softball past little league. (*Id.* at p. 208, ln. 6-13). Appellant's coaching experience was limited to teams his daughter had played on. *Id.* at p. 209, ln. 12-18. Appellant has never been a head coach. (*Id.* at p. 209, ln. 23 – p. 210, ln. 4). Appellant admitted in his deposition that Cusack had significantly more coaching experience than he did. (*Id.* at p. 207, ln. 1-4). SWOSU's decision to pay Coach Cusack a combined salary was due to her experience and skill, not based on her sex. No reasonable juror would find that the pay differential was based upon anything other than Coach Cusack's coaching

experience. The District Court properly granted summary judgment to Appellee on Plaintiff's EPA claims.

**PROPOSITION II:     THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN DECLINING TO EXERCISE SUPPLEMENTAL JURISDICTION OVER APPELLANT'S REMAINING STATE CLAIMS**

The Tenth Circuit reviews a denial of supplemental jurisdiction for abuse of discretion. *Nielander* at 1172 (10th Cir. 2009). Under 28 U.S.C. §1367(c)(3), a district court may decline to exercise supplemental jurisdiction if "the district court has dismissed all claims over which it has original jurisdiction." "When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims." *Smith v. City of Enid ex rel. Enid City Comm'n*, 149 F.3d 1151, 1156 (10th Cir. 1998). Though Appellant argues that the District Court abused its discretion because he would be harmed in the time delay to now bring his claims in state court, the District Court appropriately acknowledges that no trial submissions had been made, nor had any substantial trial preparations been done.(ROA, Vol. III at p. 271). As stated in the Order, "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine-judicial economy, convenience, fairness, and comity-will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill,* 484 U.S. 343, 350 n. 7 (1988).

Here, the district court granted summary judgment on Appellant's lone federal claim, leaving only the state claims. Thus, there were no remaining claims over which the district court had original jurisdiction. The balance of factors to be considered points to declining to exercise jurisdiction over the remaining state-law claims. Therefore, dismissing the state law claims was not an abuse of discretion. *Robbin v. City of Santa Fe,* 583 F.App'x 858, 866 (10th Cir. 2014), see also 28 U.S.C. § 1367(c)(3).

## CONCLUSION

The district court correctly held that Appellant could not establish a prima facie case of pay discrimination under the Equal Pay Act. The district court also correctly declined to exercise supplemental jurisdiction over Appellant's state law claims. For these reasons, the decision below should be affirmed.

## STATEMENT ON ORAL ARGUMENT

The facts and legal arguments are adequately presented in the briefs and record. Oral argument would not significantly aid the decisional process in this appeal and is, therefore, not requested. *See* Fed. R. App. P. 34(a)(2)(c).

Respectfully submitted,

/s/    Lauren Ray

**LAUREN RAY, OBA#22694**
**DIXIE L. COFFEY, OBA#11876**
Assistant Attorneys General
Oklahoma Attorney General's Office
Litigation Division
313 NE 21st Street
Oklahoma City, Oklahoma 73105
Telephone:  405.521.3921
Facsimile:   405.521.4518
Email: lauren.ray@oag.ok.gov
       dixie.coffey@oag.ok.gov
*Attorneys for Defendants/Appellees*

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT TYPEFACE REQUIREMENTS AND TYPE STYLE REQUIREMENTS

This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B)(i) because, excluding parts of the document exempt by Fed. R. App. P. 32(f) and 10th Cir. R. 32(B), this document contains 5392 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 36(a)(6) because this document has been prepared in a proportionally spaced typeface using MS Word 10 (2016) in 14 point font of Garamond.

## CERTIFICATE OF DIGITAL SUBMISSION

Pursuant to 10th Cir. R. 25.3 and the Tenth Circuit Court of Appeals' CM/ECF User's Manual 8th Ed., Updated April 24, 2019, I hereby certify that:

    a.  all required privacy redactions have been made pursuant to Fed. R. App. P. 24(a)(5) and 10th Cir. R. 25.5;

    b.  the hard copies of Appellees' Response Brief are exact copies of the ECF filing;

    c.  the ECF submission was scanned for viruses with the most recent version of a Symantec Endpoint Protection, last updated August 13, 2019 and, according to the program is free of viruses; and

    d.  the Appellees' Response Brief complies with applicable type volume limits as stated in the above Certificate of Compliance.

## CERTIFICATE OF SERVICE

I certify that on this 1st day of August 2022, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing; and transmitted the original and seven copies of the foregoing to the Clerk of the Court via U.S. Mail, postage prepaid and a copy to be served using the U.S. Postal Service to the following who is not an ECF registrant:

Mark Pendergraft
PO Box 402
Piedmont, OK 73078
*Plaintiff/Appellant pro se*

/s/Lauren Ray
Lauren Ray